UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONNIE QUALLS

    *Plaintiff,*

v.

FRANCIS ("MICKEY") ROACHE,
DANIEL KEELER, KENNETH TAYLOR,
DENNIS HARRIS, TIMOTHY MURRAY,
DAVID PEREZ, JOHN HARDEN, CLIFTON
HAYNES, AND THE CITY OF BOSTON

    *Defendant.*

C.A. No._____

## **INTRODUCTION**

1. This is an action for money damages for the violation of the plaintiff's constitutional rights brought pursuant to 42 U.S.C. 1983 and MGL ch. 2 §II i. Plaintiff Ronnie Qualls alleges that the defendant members of the Boston Police Department: Sgt. Daniel Keeler, Sgt Kenneth Taylor, Det Dennis Harris, Det. Timothy Murray, Officer David Perez, Officer John Harden, and Officer Clifton Haynes, withheld exculpatory evidence and knowingly allowed at least witnesses to commit perjury before the jury, in violation of the plaintiff's rights under the Massachusetts Constitution and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. As a result of the misconduct cited above, the plaintiff was convicted of two counts of first degree murder and sentenced to life in prison without parole in November 1993. The plaintiff was released after spending over twenty-seven years in prison, when the District Attorney entered a nolle prosequi on September 1, 2020. The plaintiff further alleges that the defendant City of Boston, and Boston Police Department had a policy, custom, or practice of improper and inadequate investigation and discipline of acts of misconduct committed by Boston police officers, including withholding of exculpatory evidence. The defendant police officers conspired to conceal the existence of exculpatory evidence and deny the plaintiff his right to a fair trial. The defendant *City* of Boston had a policy, custom, or practice of failure to train its police officers adequately in the laws regarding exculpatory

evidence, perjury, and other laws, rules, and regulations relating to the rights of a citizen charged with a crime. These policies, customs, or practices resulted in implicit tolerance and authorization of continuing misconduct and caused the plaintiffs improper deprivation of his constitutional rights. Defendant Roach, as police Commissioner, was responsible for failing to change the policies and properly supervise the troops.

## JURISDICTION

2. Jurisdiction is based upon 28 U.S.C. §§1331 and 1343, and on the pendent jurisdiction of this court to entertain a claim arising under state law.

## PARTIES

3. Defendant Francis ("Mickey") Roache is a citizen of Massachusetts. At all times material to the allegations in the Complaint, he was the duly appointed Police Commissioner and member of the City of Boston Police Department and acting under color of law. He is being sued in his individual as well as his official capacity.

4. Defendant Daniel Keeler was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individual as well as his official capacity as a police officer for the defendant City of Boston.

5. Defendant Kenneth Taylor was at all times relevant to this complaint a police officer employed by the. City of Boston. He is being sued in his individual as well as official capacity as a police officer for the defendant City of Boston.

6. Defendant Dennis Harris was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individu.al as well as official capacity us a police officer for the defendant City of Boston.

7. Defendant Timothy Murray was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individu.al as well as official capacity us a police officer for the defendant City of Boston.

8. Defendant David Perez was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individu.al as well as official capacity us a police officer for the defendant City of Boston.

9. Defendant John Harden was at all times relevant to this complaint a police officer employed by

the City of Boston. He is being sued in his individu.al as well as official capacity us a police officer for the defendant City of Boston.

10. Defendant Clifton Haynes was at all times relevant to this complaint a police officer employed by the City of Boston. He is being sued in his individu.al as well as official capacity us a police officer for the defendant City of Boston.

11. Defendant City of Boston is a municipality duly authorized under the laws of the Commonwealth of Massachusetts and the employer of the individual defendants.

## FACTS

12. Plaintiff re-alleges and re-assert each and every paragraph, and/or all factual assertions, as set forth above.

13. In the early morning hours of October 3, 1992, brothers Roosevelt "Tony" Price and Ronald "Dallas" Price ("Price Brothers"), were shot and killed by a lone gunman. Mr. Qualls was 20 years old at the time of the murders.

14. Minutes after he was shot, Tony Price told multiple Boston Police officers that responded to the scene, that Junior Williams had shot him. Boston Police interviewed Williams less than two hours after the shooting. He was found to be wearing a bloodstained sweatshirt at that time which Boston Police took into their possession. The Boston Police investigation team let Williams go.

15. The bloodstained sweatshirt was not tested for DNA evidence. The blood on the sweatshirt was "Type B," which was consistent with Williams' own blood, as well as the blood of both of the Price brothers. The blood type is inconsistent with Mr. Qualls.

16. BPD criminalist, Donald Hayes testified during Mr. Qualls trial that other types of tests can generally be done to narrow down a blood sample in order to find a match but no additional testing was done other than to identify the blood as Type B blood." Tr. II, Vol. 4, 174.

17. There were four (4) eyewitnesses to the shooting, all of whom knew Mr. Qualls prior to the shooting and all of whom stated that Mr. Qualls was not the shooter when they first spoke with police.

18. Three (3) of the eyewitnesses later received favorable treatment by police and prosecutors on criminal matters each witness had pending. Only after receiving favorable treatment did three (3) witnesses change their testimony and identify Qualls as the shooter.

19. Donna Carrington was the only eyewitness who did not have any criminal convictions or pending criminal matters at the time of the shooting, and she maintained that Mr. Qualls was not the gunman.

20. On November 03, 1993, Mr. Qualls was erroneously convicted of the double murder of the Price Brothers as well as gun charges stemming from the double murder. (Suffolk Superior Court Docket #9284CR11850), despite overwhelming evidence that Mr. Qualls was not involved in this shooting,

21. Mr. Qualls was erroneously convicted of the following felonies:
    a. First-degree murder of Roosevelt Price pursuant to G.L. ch. 265 §1;
    b. First-degree murder of Ronald Price pursuant to G.L. ch. 265 §1;
    c. Assault and battery with a dangerous weapon (firearm) pursuant to G.L. ch. 265 §15B(a)
    d. Unlawful possession of a firearm pursuant to G.L. ch. 269 §10(a)

22. Mr. Qualls was sentenced to consecutive life sentences for the murders and three to five years for possession of a firearm.

23. Mr. Qualls was twice tried and convicted for the First Degree Murder shootings of the Price Brothers. The first (1993) conviction was reversed for error in admitting certain hearsay statements, Commonwealth v. Qualls. 425 Mass. 163 (1997). The second (1998) conviction was affirmed. Commonwealth v. Qualls, 440 Mass. 576 (2003).

24. The Plaintiff did not commit the felonies described in the indictment or any other felony arising out of or reasonably connected to the facts supporting the indictment or any lesser included felony.

25. The Plaintiff is not guilty of conduct that would have justified any lesser included misdemeanor arising out of or reasonably connected to the facts supporting the indictment.

26. The Plaintiff was incarcerated from November 13, 1992, until his release on March 10, 2020, for the subject offense in state prison. He was incarcerated for more than twenty-seven (27) years.

27. On January 15th, 2019, the Boston College Innocence Program, representing Mr. Qualls, and the Suffolk County District Attorney's Office filed a Joint Motion for Post-Conviction Forensic Testing. The Motion was allowed on January 28, 2019.

28. On August 19th, 2019, the results of the DNA Testing showed conclusively that the drops of blood on Junior Williams' sweatshirt matched the DNA of murder victim Roosevelt "Tony" Price.
29. On January 7th, 2020, the Commonwealth of Massachusetts joined Mr. Qualls, in filing a Joint Motion for Post-Conviction Relief and requested that Mr. Qualls four (4) aforementioned felonies be vacated and Mr. Qualls be immediately released from prison.
30. On February 24, 2020, Mr. Qualls four (4) aforementioned erroneous felony convictions were vacated.
31. On March 10, 2020, Mr. Qualls was released from Custody.
32. On September 1, 2020, The Commonwealth filed Nolle Prosequi as to Mr. Qualls four (4) aforementioned erroneous felony convictions.
33. Mr. Qualls four (4) erroneous felony convictions were vacated by joint motion by the Commonwealth, and *nolle prosequi* was entered on grounds which tend to establish the innocence of the Plaintiff.
    a. First-degree murder of Roosevelt Price pursuant to G.L. ch. 265 §1;
    b. First-degree murder of Ronald Price pursuant to G.L. ch. 265 §1;
    c. Assault and battery with a dangerous weapon (firearm) pursuant to G.L. ch. 265 §15B(a)
    d. Unlawful possession of a firearm pursuant to G.L. ch. 269 §10(a)
34. There are no criminal charges pending against the Plaintiff for the charges that are the subject of this claim or for any act associated with the underlying felony conviction.
35. The Defendants willfully ignored eyewitness testimony from the victim, willfully ignored blood evidence which exonerated the Plaintiff, and defendants badgered and intimidated witnesses into identifying the plaintiff when they initially stated that they could not make an identification.  The defendants secured an indictment against the Plaintiff with false and misleading information. The defendant City of Boston implicitly tolerated unlawful police practices including suppression of exculpatory evidence and perjury by failing to investigate properly and punish adequately officers who withheld exculpatory evidence and gave false testimony. Boston police officers thus believed they could violate with impunity the constitutional rights of defendants.

36. Because of the actions of the defendants, the plaintiff sustained severe permanent personal and emotional injuries, including but not limited to, loss of liberty, loss of income, humiliation, and extreme emotional distress.

### COUNT I:
### VIOLATION OF 42 U.S.C. §1983 BY DEFENDANTS KEELER, TAYLOR, HARRIS, MURRAY, PEREZ, HARDEN, HAYNES,

37. Plaintiff repeats, re-alleges and reiterates each and every paragraph, and/or all factual assertions, as set forth above.
38. By the actions described above, Defendants deprived the plaintiff of due process and his right to a fair trial, in violation of 42 U.S.C. §1983 and the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States and are jointly liable.

### COUNT II:
### VIOLATION OF 42 U.S.C. § 1983 CONSPIRACY BY DEFENDANTS KEELER, TAYLOR, HARRIS, MURRAY, PEREZ, HARDEN, HAYNES,

39. Plaintiff repeats, re-alleges and reiterates each and every paragraph, and/or all factual assertions, as set forth above.
40. Defendants conspired together to deprive the plaintiff of his constitutional rights) his right to receive exculpatory evidence, and his right to a fair trial and are jointly liable.
41. In furtherance of this conspiracy, the defendant police officers concealed the existence of exculpatory evidence.

### COUNT III:
### VIOLATION OP 42 U.S.C. §1983 BY DEFENDANT CITY OF BOSTON

42. Plaintiff repeats, re-alleges and reiterates each and every paragraph, and/or all factual assertions, as set forth above.
43. The City of Boston maintains policies) customs, or practices exhibiting deliberate indifference to the constitutional rights of persons in Boston, which caused the violation of the plaintiff's rights.
44. It was the policy, custom) or practice of the defendant City of Boston to allow the defendant

officers and other members of the police department to ignore laws, rules, and regulations governing proper police conduct. Pursuant to this policy, custom, or practice, defendant City of Boston implicitly tolerated unlawful police practices including pe jury and the withholding of exculpatory evidence, failed to investigate adequately citizen complaints against its police officers, and failed to train and supervise properly its officers. The defendant City also tolerated a Code of Silence that allowed officers to violate constitutional rights of citizens with impunity.

45. This custom and policy goes back many years. As far back as 1981) a Superior Court judge found that Detective Arthur Linsky lied before the grand jury in the case of *Commonwealth v. Salmon,* 387 Mass. 160 (1982)) but no disciplinary action was taken against him by the Boston Police.

46. In 1991, the then-Mayor of Boston, Raymond Flynn, requested that a special commission review the practices of the Boston police. The St. Clair Report was submitted on January 14, I 992.

47. The Report found a wide range of problems in the police department's Internal Affairs Division.

48. It reviewed complaints filed against Boston Police Department personnel since 1981.

49. The Report found that only 5.9% of the complaints were sustained and that such a statistic "strains the imagination as it assures 94% of the complaints are without merit".

50. The defendant City of Boston's policies, practices, or customs, as described in paragraphs 29 and 35, are illustrated by but not limited to the following conduct:

51. Christopher Harding was wrongfully arrested and convicted of attempted murder because members of the Boston police department committed perjury and withheld exculpatory evidence. On August 1 8, 1989, a shooting took place in the Mission Hill Housing Project where Mr. Harding lived. Boston police officers captured one suspect but the other fled. Officer Terrence O'Neil claimed he saw Mr. Harding running away and that Mr. Harding fired three shots, one of which was fired at him. Officer Mitchell wrote a report supporting O'Neil's claims, which she knew were false. Boston police officer Michael Stratton testified at trial that he witnessed Mr. Harding shoot at O'Neil. The officers' version of the events was proven to be false by a ballistics expert before trial. The expert proved conclusively that the bullet that struck the victim had been fired from the gun belonging to the second suspect and that only three bullets were fired from that gun. Thus, it was impossible for O'Neil, Stratton, or Mitchell

to have witnessed three shots fired from that gun, as they claimed. The Boston Police Department suppressed this crucial exculpatory evidence of the ballistic expert's findings until just prior to

52. Mr. Harding's tri.al. In addition, because she might have recanted her earlier report, the Bo ton pol ice department falsely stated that Officer Mitchell was out of town during the trial and could not testify, thereby suppressing exculpatory evidence. Mr. Harding was released after spending approximately seven years in jail. Boston police officers Stratton and Mitchell have never been disciplined in connection with this misconduct and O'Neil was not fired for his involvement until January 20, 2000.

53. City of Boston police officers falsely arrested Gary Willoughby in September 1989, and charged him with homicide. He was a poor Jamaican immigrant with no criminal record and no connection to the incident. After a pol ice officer committed perjury before the grand jury, Mr. Willoughby was acquitted of all wrongdoing in 1990. He subsequently sued the City of Boston and the police officer. The City paid for the officer's defense and, in 1994, it compensated Mr. Willoughby for the wrongs committed against him. The police officer involved has never been disciplined in connection with this incident.

54. After serving seven years and three months in prison, Marvin Mitchell was vindicated through DNA testing and his conviction for rape was vacated in 1989. The victim described her assailant to the police as having worn pink pants, while Mr. Mitchell told the police he had been wearing gray pants on the day of the attack. In addition, the victim told the officers that the assailant had one crossed eye and was clean-shaven. Mr. Mitchell, on the other hand, did not have a crossed eye and had a goatee at the time of the incident. Boston police officers Trent Holland and Robin DeMarco both falsely testified under oath that Mr. Mitchell, while being detained, had suddenly exclaimed that he had been wearing pink pants on the day the victim w L:,; attacked. Officers DeMarco and Holland have never been disciplined in connection with this misconduct.

55. A judge threw out a jury's 1989 guilty verdicts on drug charges secured through the testimony of Boston police officer Trent Holland. When Superior Court Judge Elizabeth A. Porada, who was later elevated to the Court of Appeals, threw out the verdicts, she ordered an investigation into whether or not Holland committed perjury. Judge Porada concluded that Holland's testimony about watching a drug transaction from a certain vantage point was necessarily false

because his view would have been obstructed by a building. The pe jury investigation was conducted by Boston police Sergeant James Curran. Not only was Holland not disciplined in connection with this misconduct, but he was also later promoted to detective.

56. On October 23, 1989, Charles and Carol Stuart were shot in the Mission Hill neighborhood of Boston. William Bennett became a suspect and through intimidation and coercion, the police produced witnesses to implicate him. The police threatened the witnesses with arrest, physical beatings and imprisonment if they did not testify against Bennett. The police offered witnesses money and other inducements in an attempt to coerce them to testify

57. falsely against Bennett. They supplied witnesses with crucial facts previously known to them for the purpose of enhancing the witnesses' knowledge of incriminating facts against Bennett. In addition, the police planted evidence in homes of witnesses in order to pressure them into incriminating Bennett. Bennett was, in fact, innocent of the charges.

58. On November 21, 199 l, a Suffolk County grand jury returned indictments against Tarahn Harris for murder in the first degree. In ruling in favor of Harris' Motion to Dismiss the indictment, the Honorable Isaac Borenstein, Justice of the Superior Court, found that City of Boston police officer Herbert Spellman "knowingly and intentionally falsified, recklessly fabricated, distorted, misled and deceived the grand jury." Officer Spellman distorted Harris' statement, suggesting to the jury that Harris made incriminating statements, while failing to inform the jury that Harris actually made exculpatory statements as well. He assigned to Harris statements that Harris had not made and knowledge that Harris may not have had. Judge Borenstein was "convinced that Officer Spellman knowingly falsified and distorted the evidence against Tarahn Harris...for the purpose of strengthening what appeared to be a *weak* case against Tarahn Harris." Tn response to a complaint of misconduct relating to this incident made to the

59. Boston Police Department, the Boston Police Department on July 15, 1999, in spite of Judge Borerntein's findings, found the allegations against Officer Spellman to be "Not Sustained" and the Police Commissioner accepted the finding.

60. In 1994, Jerome Goffigan, an 11-year-old child, was murdered. Donnell Johnson was charged with the murder. The case agent, Detective William Mahoney, suppressed exculpatory evidence and lied under oath in Johnson's murder trial. Johnson was convicted but later released as an innocent man after five years in prison. Mahoney was never charged with perjury and pursuant

to a compliant to internal affairs, he was found only to have been negligent in failing to turn over exculpatory evidence. Mahoney received only a 30 day suspension in 2002 that he has appealed.

61. To this very day, the Internal Affairs Division of the Boston Police Department continues to whitewash serious complaints of police misconduct. If any misconduct is found in its investigations, it is only for a much lesser charge than merited by the evidence, and the penalty does not fit the abuse.

## COUNT IV:
## VIOLATION OF M.G.L. c. 12 §11I

62. Plaintiff repeats, re-alleges and reiterates each and every paragraph, and/or all factual assertions, as set forth above.

63. By the actions described in above, the Defendants deprived the plaintiff of his civil rights, secured by the Constitutions of the United States and The Commonwealth of Massachusetts, through the use of threats, intimidation, and coercion, in violation or M.G.L. c.12 §11I

WHEREFORE, The plaintiff requests that this Honorable Court:
1. Award compensatory damages against the defendants jointly and severally;
2. Award punitive damages against the defendants;
3. Award The costs of this action, including reasonable attorneys fees.

## JURY TRIAL DEMAND

A jury trial is hereby demanded.

Respectfully submitted,
The Plaintiff,
By his attorney

*Kelsey R. Rose*
Kelsey Raycroft Rose, BBO # 692102
MORGAN & MORGAN, P.A.
155 Federal Street, 15th Floor
Boston, MA 02110
KRose@forthepeople.com
Phone: 857-383-4903
Fax: 857-383-4928

Date: 2/23/2023